

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

February 7, 2023

<u>Via ECF</u>
The Honorable District Judge Gary R. Brown
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: **<u>Souza v. Here We Come Inc., et al.</u>**
    **22-CV-4535 (GRB)(LGD)**

Dear Judge Brown:

    Our office represents Inocente Souza ("Plaintiff" or "Souza") and we submit this motion jointly with counsel for Here We Come Inc. d/b/a John Anthony's Pizzeria and Angelo Genova (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached following a Court-annexed mediation on December 5, 2022.

    The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

    **I.**    **<u>The Monetary Terms of the Settlement Agreement are Fair and Reasonable</u>**

        **a.**  **The Settlement Amount**

    The parties agreed to resolve all claims asserted in this action, including Plaintiffs' counsel's attorneys' fees, which are addressed below, for the global amount of $51,000.00.

        **b.**  **Plaintiff's Position**

    Plaintiff brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). In general, Plaintiff alleged that, as a former food preparer, and dishwasher at Defendants' restaurant located at 1056 Franklin

Avenue, Valley Stream, New York 11580, he was not paid proper overtime rates when required to work in excess of 40 hours per week. Plaintiff also alleged that he was not paid an additional hour at the applicable NYS minimum wage when required to work in excess of ten hours per shift in violation of the NYLL's spread of hours provisions.

Plaintiff was employed by Defendants from in or around March 2019 until in or around May 2022. Plaintiff alleged that he was paid a flat hourly rate of $15.00 per hour for all hours worked throughout the entirety of his employment. Plaintiff further alleged that he was regularly to work up to seventy-eight (78) hours per week. As such, Plaintiff claimed that he was owed the half-time rate of $7.50 per hour for approximately thirty-eight (38) hours per week.

In total, Plaintiff alleged approximately $59,000.00 in unpaid wages in addition to liquidated damages and statutory penalties under NYLL §195 for Defendants' alleged failure to provide proper wage notices and wage statements.

Although Plaintiff was confident that he could recover the full amount of his alleged damages should he have prevailed at a trial, Plaintiff's preference was for a guaranteed settlement amount that allows him to recover almost all of his alleged unpaid wages. In deciding to settle this matter, Plaintiff considered: 1) the divergent factual disputes as to the number of hours that Plaintiff worked each week, 2) the value of a settlement payment in the near future as opposed to the uncertainty of a trial at a much later date in the future, and 3) Defendants' financial status and ability to pay the settlement funds. Settlement at this juncture – before engaging in formal discovery – allows Plaintiff to avoid the costs, expenses, and risks of potentially protracted litigation and allows him to recover a significant portion of his alleged unpaid wages.

### c. Defendants' Position

Defendants take the following positions. Defendants seriously contest many, if not all, of Plaintiff's allegations. First, Defendants reject the allegation that Plaintiff worked six (6) days per week. In fact, numerous witnesses observed Plaintiff always work five (5) days per week, thus, significantly limiting the number of hours Plaintiff could have worked. Plaintiff also did not work the hours he alleges – Plaintiff claims he started work at 8 a.m. each day, though the restaurant did not open to the public until 11 a.m. Plaintiff arrived, at the earliest, at 10:30 a.m. – again, there are witnesses who can corroborate that he arrived then and that there was no need for a cook to arrive three hours before the restaurant opened. Plaintiff's allegations also fail to recognize the reality of the restaurant's operations during the pandemic. Indeed, Plaintiff's hours were drastically cut post-March 2020 as a result of the restaurant significantly cutting its business hours. In sum, there is little, if any, support for Plaintiff's exaggerated allegations of days and hours worked.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted).

Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $51,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after a mediation session before a highly qualified and experienced Court-appointed mediator with all parties present. The parties had genuine, bona fide disputes over the hours worked by Plaintiff and the pay received by Plaintiff but negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount. Moreover, the settlement accounts for the economic realities of Defendants' business.

## II. The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 2 of the Settlement Agreement ("Release of Plaintiffs' Wage and Hour Claims") is appropriately-tailored to claims under the FLSA, NYLL and associated regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants, and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III.  Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

#### a.  Distribution to Plaintiff

The parties agreed to a global settlement of $51,000.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $33,360.00 after the requested attorneys' fees and expenses.

#### b.  Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $960.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $402.00
- the costs of attempted and actual service of the summons and Complaint on all Defendants: $258.00
- the cost of the Court-annexed mediation: $300.00

Additionally, Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($50,040.00), or $16,680.00 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $17,640.00.

**Settlement Amount:** $51,000.00
**Attorneys' Expenses:** $960.00
**Net Settlement Amount:** $50,040.00 ($51,000.00 - $960.00)
**Requested Attorneys' Fees:** $16,680.00 ($50,040.00 / 3)
**Total payable to Attorneys:** $17,640.00 ($16,680.00 + $17,640.00)
**Total payable to Plaintiff:** $33,360.00 ($51,000.00 - $17,640.00)

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation of this matter and the recovery secured through their efforts. Plaintiff's counsel has zealously advocated for their client throughout the litigation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

### IV.  Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between

experienced counsel with the assistance of the Court-annexed mediation program. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

                                        Respectfully submitted,

                                        *James O'Donnell*
                                        James O'Donnell, Esq.